No. 21-60285

# In the United States Court of Appeals for the Fifth Circuit

TESLA, INCORPORATED,
*Petitioner Cross-Respondent*,

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS
OF AMERICA, AFL-CIO,
*Petitioner*

v.

NATIONAL LABOR RELATIONS BOARD,
*Respondent Cross-Petitioner.*

———————————

On Petitions for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board

———————————

**Brief of *Amicus Curiae* New Civil Liberties Alliance
in Support of Petitioner Cross-Respondent Tesla, Incorporated
with Consent of All Parties**

———————————

ADITYA DYNAR
SHENG LI
JEFFREY BOSSERT CLARK
**NEW CIVIL LIBERTIES ALLIANCE**
1225 19th St. NW, Suite 450
Washington, DC 20036
(202) 869-5210
Adi.Dynar@NCLA.legal
Sheng.Li@NCLA.legal
*Attorneys for Amicus Curiae*

## SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS

**Case No.**: 21-60285

**Case Style**: Tesla, Inc., Petitioner Cross-Respondent, and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO, Petitioner v. National Labor Relations Board, Respondent Cross-Petitioner.

Petitioner Cross-Respondent has set forth the interested parties in this case in its principal brief. Pursuant to Fifth Circuit Rule 29.2, which requires a "supplemental statement of interested parties, if necessary to fully disclose all those with an interest in the amicus brief," undersigned counsel of record certifies that, in addition to the persons listed in Petitioner Cross-Respondent's principal brief, the following have an interest in this brief, but no financial interest in this litigation. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal.

**Amicus Curiae**:                    New Civil Liberties Alliance

**Attorneys for Amicus Curiae**:      Aditya Dynar
                                      Sheng Li
                                      Jeffrey Bossert Clark
                                      New Civil Liberties Alliance
                                      1225 19th St. NW, Suite 450
                                      Washington, DC 20036
                                      (202) 869-5210
                                      Adi.Dynar@NCLA.legal
                                      Sheng.Li@NCLA.legal

                                      */s/ Aditya Dynar*
                                      Aditya Dynar
                                      Attorney of record for *Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1. *amicus curiae* New Civil Liberties Alliance states that it is a nonprofit organization under the laws of the District of Columbia. It has no parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

# TABLE OF CONTENTS

SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS..........................ii

CORPORATE DISCLOSURE STATEMENT...............................................iii

TABLE OF AUTHORITIES ............................................................... v

GLOSSARY ................................................................................x

STATEMENT OF INTEREST OF AMICUS CURIAE.............................. 1

SUMMARY OF THE ARGUMENT.................................................... 2

ARGUMENT ............................................................................. 4

I.    THE COURT SHOULD DISCARD NLRB'S LABORED READING OF THE
      NLRA ............................................................................ 4

II.   THE COURT SHOULD NOT AFFORD ANY DEFERENCE TO NLRB'S
      INTERPRETATIONS ............................................................ 8

      A.    Deference Violates the Fifth Amendment's Due Process Clause............ 9

      B.    Deference Undermines Judicial Independence Under Article III .......... 10

      C.    Deference Violates the Constitution's Separation of Powers.................. 12

      D.    Canons of Construction Fully Resolve the Interpretive Question
            Here, Making Deference Unnecessary...................................... 12

      E.    Home Concrete Forbids NLRB's Revision of Supreme Court
            Decisions .................................................................... 15

      F.    No Deference Is Due in Cases Arising from Agency Adjudication ....... 16

      G.    NLRB Consciously Disregards Circuit-Court Decisions ........................ 17

CONCLUSION AND PRAYER ....................................................... 23

CERTIFICATE OF SERVICE ........................................................ 24

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ........................... 26

ECF CERTIFICATION................................................................. 27

# TABLE OF AUTHORITIES

## CASES

*American Freightways Co.,*
124 NLRB 146 (1959) .................................................................. 3, 5, 7, 8

*Arangure v. Whitaker,*
911 F.3d 333 (6th Cir. 2018) ..................................................... 13

*Baisley v. International Association of Machinists & Aerospace Workers,*
983 F.3d 809 (5th Cir. 2020) ..................................................... 20

*Baldwin v. United States,*
140 S. Ct. 690 (2020) ............................................................... 11, 17

*Brown v. Entertainment Merchants Ass'n,*
564 U.S. 786 (2011) ................................................................... 4

*Caperton v. A.T. Massey Coal Co.,*
556 U.S. 868 (2009) ................................................................... 9

*Chevron U.S.A. Inc. v. Natural Res. Def. Council,*
467 U.S. 837 (1984) ...........................................................*passim*

*Christopher v. SmithKline Beecham Corp.,*
567 U.S. 142 (2012) ................................................................... 17

*City of Arlington v. FCC,*
569 U.S. 290 (2013) ........................................................... 11, 13, 14

*Colony, Inc. v. Commissioner,*
357 U.S. 28 (1958) ..................................................................... 15

*De Niz Robles v. Lynch,*
803 F.3d 1165 (10th Cir. 2015) ................................................. 17

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg & Constr. Trades Council,*
485 U.S. 568 (1988) ................................................................... 14

*Egan v. Delaware River Port Authority,*
851 F.3d 263 (3d Cir. 2017) ....................................................... 9

*Elonis v. United States,*
575 U.S. 723 (2015) ...........................................................*passim*

*Epic Sys Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ........................................................ 15

*FCC v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012)........................................................... 17

*Federal-Mogul Corp. v. NLRB*,
    566 F.2d 1245 (5th Cir. 1978).....................................*passim*

*FedEx Home Delivery v. NLRB*,
    849 F.3d 1123 (D.C. Cir. 2017) ....................................... 13

*Garfias-Rodriguez v. Holder*,
    702 F.3d 504 (9th Cir. 2012)............................................ 20

*Gutierrez-Brizuela v. Lynch*,
    834 F.3d 1142 (10th Cir. 2016)....................................9, 17

*Hayburn's Case*,
    2 U.S. 408 (1792)............................................................. 22

*Heartland Plymouth MI, LLC v. NLRB*,
    838 F.3d 16 (D.C. Cir. 2016) .....................................18, 19

*Hoffman Plastic Compounds, Inc. v. NLRB*,
    535 U.S. 137 (2002).......................................................... 14

*Jicarilla Apache Tribe v. FERC*,
    578 F.2d 289 (10th Cir. 1978)......................................... 13

*Johnson v. Randolph*,
    5 F.3d 1494 (5th Cir. 1993) ............................................... 4

*Joseph Burstyn, Inc. v. Wilson*,
    343 U.S. 495 (1952)........................................................... 4

*Kisor v. Wilkie*,
    139 S. Ct. 2400 (2019) ............................... 11, 12, 18, 21

*Knight First Amendment Institute at Columbia v. Trump*,
    928 F.3d 226 (2d Cir. 2019),
    *vacated as moot sub nom.*,
    *Biden v. Knight First Amendment Institute at Columbia*,
    141 S. Ct. 1220 (2021) ..................................................... 4

*Marbury v. Madison*,
    5 U.S. 137 (1803) ................................................................................. 1, 12

*Martin v. Medtronic, Inc.*,
    254 F.3d 573 (5th Cir. 2001) ............................................................. 20

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Com'n*,
    138 S. Ct. 1719 (2018) ........................................................................ 9

*Michigan v. EPA*,
    576 U.S. 743 (2015) ............................................................................ 12

*MikLin Enterprises, Inc. v. NLRB*,
    861 F.3d 812 (8th Cir. 2017) ........................................................ 11, 13

*National Cable & Telecommunications Ass'n v. Brand X Internet Services*,
    545 U.S. 967 (2005) ....................................................................*passim*

*NLRB v. Gissel Packing Co.*,
    395 U.S. 575 (1969) ....................................................................*passim*

*Plaut v. Spendthrift Farm, Inc.*,
    514 U.S. 211 (1995) ............................................................................ 22

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) ...........................................................3, 5, 6, 7, 16

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) ............................................................................ 21

*St. Charles Journal, Inc. v. NLRB*,
    679 F.2d 759 (8th Cir. 1982) ............................................................. 13

*Tamez v. City of San Marcos*,
    118 F.3d 1085 (5th Cir. 1997) ........................................................... 16

*Thomas v. Collins*,
    323 U.S. 516 (1945) ............................................................................. 4

*United States v. Dickson*,
    40 U.S. 141 (1841) ......................................................................... 12, 13

*United States v. Home Concrete & Supply, LLC*,
    566 U.S. 479 (2012) ....................................................... 15, 16, 17, 19

*United States v. Strahan*,
   134 Fed. Appx. 709 (5th Cir. 2005) ...................................................... 21

*Valent v. Commissioner of Social Security*,
   918 F.3d 516 (6th Cir. 2019) .............................................................. 10

*West Virginia State Board of Education v. Barnette*,
   319 U.S. 624 (1943) ......................................................................... 8

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 1 (Vesting Clause) ................................................. 12

U.S. Const. art. III .......................................................... 3, 10, 12, 20, 22

U.S. Const. art. III, § 1 (Vesting Clause) ............................................... 12

U.S. Const. amend. I .................................................................... *passim*

U.S. Const. amend. V (Due Process Clause) ..................................... *passim*

## STATUTES

28 U.S.C. § 453 .......................................................................... 9

29 U.S.C. § 158(a)(1) ............................................................... *passim*

29 U.S.C. § 158(b)(4) ................................................................... 7

29 U.S.C. § 158(c) .................................................................. *passim*

29 U.S.C. § 160(e) ..................................................................... 20

29 U.S.C. § 160(f) ..................................................................... 20

## RULES

Fed. R. App. P. 26.1 .................................................................... iii

Fed. R. App. P. 29(a)(5) ................................................................ 26

Fed. R. App. P. 32(a)(5) ................................................................ 26

Fed. R. App. P. 32(a)(6) ................................................................ 26

Fed. R. App. P. 32(a)(7)(B) .......................................................... 26

Fifth Circuit Rule 25.2.1 .............................................................. 27

Fifth Circuit Rule 25.2.2 .............................................................. 27

Fifth Circuit Rule 25.2.13 ............................................................ 27

Fifth Circuit Rule 29.2 .................................................................... ii

## NLRB DECISIONS

*Bardcor Corp.*,
　　270 NLRB 1083 (1984) ...................................................... 5, 6, 7

*FDRLST Media, LLC*,
　　370 NLRB No. 49 (Nov. 24, 2020) ......................................*passim*

*GM Electrics*,
　　323 NLRB 125 (1997) ............................................................. 5

*International Union of Operating Engineers, Local No. 150*,
　　371 NLRB No. 8 (2021) ........................................................ 5, 7

*Miller Electric Pump & Plumbing*,
　　334 NLRB No. 108 (2001) ................................................... 5, 15

## OTHER AUTHORITIES

Kristin E. Hickman & Aaron L. Nielson, *Narrowing* Chevron*'s Domain*,
　　70 Duke L.J. 931 (2021) .................................................... 16, 17

May 20, 2018 Twitter Exchange,
　　https://bit.ly/3s0MBKx .......................................................... 2

NLRB Division of Judges Bench Book (Jan 2021),
　　https://bit.ly/2P0r2dY ...................................................... 17, 18

Philip Hamburger, Chevron *Bias*,
　　84 Geo. Wash. L. Rev. 1187 (2016) ........................................ 9

# GLOSSARY

| | |
|---|---|
| ALJ | Administrative Law Judge |
| APA | Administrative Procedure Act (Pub. L. 79-404 (1946), codified at 5 U.S.C.) |
| FRAP | Federal Rules of Appellate Procedure |
| NLRA | National Labor Relations Act (codified at 29 U.S.C. §§ 151–169) |
| NLRB | National Labor Relations Board |
| ROA | Record on Appeal in the Fifth Circuit |
| Section | Refers to specific sections of the NLRA |
| Tesla | Tesla, Incorporated |

## STATEMENT OF INTEREST OF AMICUS CURIAE

*Amicus Curiae* the New Civil Liberties Alliance is a nonpartisan, nonprofit organization devoted to defending civil liberties. NCLA was founded to challenge multiple constitutional defects in the modern administrative state through original litigation, *amicus curiae* briefs, and other means of advocacy.

This case is particularly important to NCLA. The National Labor Relations Board decided this case against Tesla, Inc., based on the Board's decision from a few months ago in *FDRLST Media, LLC*, 370 NLRB No. 49 (Nov. 24, 2020); ROA.6222. NCLA currently represents FDRLST Media, LLC in the United States Court of Appeals for the Third Circuit, in an appeal from the Board's November 2020 decision against FDRLST. Case Nos. 20-3434, 20-3492. There are multiple constitutional defects in the Board's FDRLST decision, which the Board only exacerbated when it relied exclusively on the FDRLST decision to rule against Tesla. In doing so, NLRB ignored decisions of the Supreme Court and this Court interpreting and applying 29 U.S.C. § 158(c), as well as the First Amendment.

NCLA wishes to emphasize that this Court should not defer to NLRB's fundamentally flawed decision in *FDRLST* and its application to Tesla. To defer would be to eschew the fundamental duty of federal courts "to say what the law is."

All parties consent to the filing of this brief. No counsel for a party authored any part of this brief. And no one other than the *amicus curiae*, its members, or its counsel contributed money that was intended to finance the preparation or submission of this brief.

## SUMMARY OF THE ARGUMENT

In a May 20, 2018 exchange on Twitter, Elon Musk told an activist that reports of his factories not using yellow paint as a safety signal were false. The activist then changed the subject to ask: "How about unions?" Mr. Musk responded:

> Nothing stopping Tesla team at our car plant from voting union. Could do so tmrw if they wanted. But why pay union dues & give up stock options for nothing? Our safety record is 2X better than when plant was UAW & everybody already gets healthcare.

ROA.6263; *see also* https://bit.ly/3s0MBKx. Based on this exchange, a union and Tesla's employees filed a charge with NLRB alleging that Tesla committed an unfair labor practice, and NLRB's General Counsel issued a complaint against Tesla, alleging that the tweet was a threat. ROA.6264. Calling it "an issue of first impression," the ALJ concluded that Tesla violated Section 158(a)(1)'s prohibition against coercion "by … [t]hreatening employees … with loss of stock options if they vote in favor of the Union." ROA.6265. The ALJ did not issue a delete-the-tweet order. ROA.6266–6267.

By the time the Board decided the case in March 2021, ROA.6214, it was no longer an issue of first impression. In November 2020, NLRB had decided *FDRLST Media, LLC*, 370 NLRB No. 49 (Nov. 24, 2020).[1] NLRB ordered Tesla "to direct Musk to delete the unlawful tweet," "[c]onsistent with our recent decision in *FDRLST Media, LLC*." ROA.6222. NLRB relied exclusively on its decision in *FDRLST* to conclude that Tesla violated Section 158(a)(1). *See* ROA.6222 (supplying no other authority).

---

[1]    Counsel for *amicus curiae* is also party counsel for FDRLST Media, LLC in the Third Circuit. Case Nos. 20-3434, 20-3492.

In *FDRLST*, NLRB ignored the Supreme Court's and this Court's holdings that the First Amendment requires consideration of context in determining whether a statement constitutes unfair labor practice under Section 158(a)(1). *NLRB v. Gissel Packing Co.*, 395 U.S. 575 (1969); *see also Reed v. Town of Gilbert*, 576 U.S. 155 (2015); *Elonis v. United States*, 575 U.S. 723 (2015); *Federal-Mogul Corp. v. NLRB*, 566 F.2d 1245 (5th Cir. 1978). Instead, it relied on its own pre-*Gissel* decision in *American Freightways Co.*, 124 NLRB 146 (1959), to conclude that context does not matter. *FDRLST*, 370 NLRB No. 49, at *1 n.3, 4 (2020). The decision below is incompatible with the First Amendment, and this Court should reject NLRB's folly.

To the extent NLRB claims to have interpreted the statute (29 U.S.C. §§ 158(a)(1), 158(c)) to conclude that Mr. Musk's tweet is an unfair labor practice, this Court should decline to afford that interpretation *Chevron* deference.[2] Because NLRB may not rewrite the Supreme Court's *Gissel* test, and should not fail to apply the Supreme Court's and this Court's First Amendment jurisprudence, this Court should decline to afford *Brand X* deference to NLRB's defiance of federal-court decisions.[3] *See also* Tesla Br. 3, 25–27, 50 (asking this Court to reject deference to any aspect of NLRB's decision). Granting deference to agency interpretations violates the Fifth Amendment's Due Process Clause, undermines judicial independence under Article III, and violates the separation of powers doctrine of the United States Constitution.

---

[2]     *Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984).

[3]     *National Cable & Telecom. Ass'n v. Brand X Internet Services*, 545 U.S. 967 (2005).

# ARGUMENT

## I.    THE COURT SHOULD DISCARD NLRB'S LABORED READING OF THE NLRA

The rights to speak and associate freely are sacrosanct under the First Amendment and "not confined to any field of human interest." *Thomas v. Collins*, 323 U.S. 516, 531 (1945). The exercise of those rights on "social media is entitled to the same First Amendment protections as other forms of media." *Knight First Amendment Institute at Columbia v. Trump*, 928 F.3d 226, 237 (2d Cir. 2019), *vacated as moot sub nom.*, *Biden v. Knight First Amendment Institute at Columbia*, 141 S. Ct. 1220 (2021). The basic First Amendment principles "do not vary" by "medium of communication." *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 503 (1952); *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 790 (2011). And these constitutional safeguards are not rendered ineffectual because "interests of workingmen are involved." *Thomas*, 323 U.S. at 531.

NLRA Section 158(a)(1)'s definition of employer-to-employee coercion as a form of prohibited "unfair labor practice" must be read against this First Amendment backdrop. Indeed, Section 158(c) provides that expressing views without improper threat or promise shall not be deemed an "unfair labor practice." According to the Supreme Court, Section 158(a)(1) is limited in scope by Section 158(c) because it "merely implements the First Amendment." *Gissel*, 395 U.S. at 617.

*Gissel* instructs the tribunal to consider evidence contextualizing the online comment, including the speaker's motive, intended audience, listener's remarks, and how the statement is perceived by the listeners—among other factors about the type of speech involved. Situation-specific information about the scope, reach, and intended audience informs the factfinder whether, given the totality of circumstances, an

4

employer communicated an improper threat or promise and therefore committed an unfair labor practice under Section 158(a)(1). This Court said as much and more in *Federal-Mogul*, 566 F.2d 1245. That case explained the type, quality, and quantity of evidence needed to prove a Section 158(a)(1) violation and affirmed there is ample room for an employer to express its views amidst labor-organizing activity. *Id.* at 1253. Mr. Musk's tweet falls far short of what is usually considered an actionable unfair labor practice. *See, e.g.*, *International Union of Operating Engineers, Local No. 150*, 371 NLRB No. 8 (2021) (displaying the "Scabby the Rat" inflatable balloon is not an unfair labor practice).

Until NLRB's *FDRLST* decision, NLRB applied *Gissel*'s totality-of-circumstances approach to statements like Mr. Musk's. *Miller Electric Pump & Plumbing*, 334 NLRB No. 108 (2001) ("motive and probable success or failure of the coercion may be considered"); *GM Electrics*, 323 NLRB 125, 127 (1997) (requiring proof of "all circumstances"); *Bardcor Corp.*, 270 NLRB 1083 (1984) (same). In *FDRLST*, NLRB ignored employer motive and other context and resurrected the pre-*Gissel* rule "that the test of interference, restraint, and coercion under Section 8(a)(1) of the Act does not turn on the employer's motive or on whether the coercion succeeded or failed." 370 NLRB No. 49, at *1 n.3 (quoting *American Freightways*, 124 NRLB at 147). NRLB perpetuates this error here by resting its decision exclusively on the *FDRLST* decision.

This case is an aberration under the First Amendment. NLRB's decision against Tesla is inconsistent with First Amendment precedent: *Gissel*, *Federal-Mogul*, *Reed*, and *Elonis*.

*Reed* concludes that strict scrutiny applies when a law targets "specific subject matter" (as here, speech about employer–employee relations), "even if [the law] does not discriminate among viewpoints within that subject matter." 576 U.S. at 169. Thus, if Sections 158(a)(1) and 158(c) prohibited First Amendment-protected speech, then they would be subject to strict scrutiny, a test which they would surely flunk. Sections 158(a)(1) and 158(c) can stay within the bounds of the Constitution if they prohibit only expression that falls outside First Amendment protection, *Gissel*, 395 U.S. at 617, *i.e.*, "true threats" against unionization. Under Supreme Court precedent, whether speech constitutes an actionable threat must consider the context in which the speech is made, including the speaker's motive. *Elonis*, 575 U.S. 726–31.

In *Elonis*, the government had produced the defendant's Facebook posts as evidence of threat. 575 U.S. at 726–31. The Court concluded that Congress's use of the word "threat" includes a scienter requirement. *Id.* at 735–37; *see also* 29 U.S.C. § 158(c) ("threat of reprisal or force or promise of benefit"). Like the statute at issue in *Elonis*, the NLRA does not define the term "threat." Neither statute "specif[ies] any mental state." 575 U.S. at 734. That "does not mean that none exists." *Id.* Federal-court cases applying Sections 158(a)(1) and 158(c) are consistent with *Elonis* by considering the motive of the speaker to assess whether a true threat was made. Prior NLRB cases analyzing employer speech did the same. In *Bardcor Corp.*, 270 NLRB 1083 (1984), an employee asked her supervisor why the company's president was taking photos of employees in the plant. The supervisor answered that the president was "taking pictures of employees so that he would have something to remember them by after they were fired for union activity." *Id.* at 1085. The Board, considering all context, including the

context in which the colloquy occurred, found that the supervisor's answer was not a threat, and therefore was not actionable. *Id.* at 1084. *Bardcor* applies *Gissel* and scienter properly and is consistent with current First Amendment law, *Reed* and *Elonis* included.

More recently, NLRB analyzed context to determine that a union's expression, *i.e.*, erecting an inflatable "Scabby the Rat" at an employer's entrance, was not a "threat, coercion, or restraint" against other workers in violation of 29 U.S.C. § 158(b)(4). *Int'l Union*, 371 NLRB No. 8. NLRB's Chairman explained that "the potential infringement of a union's First Amendment rights precludes the Board from finding that the banners and [an] inflatable rat in these circumstances violate Section 8(b)(4)(ii)(B)." *Id.* at *2. Curiously, however, NLRB declined to apply First Amendment principles here and instead relied on its *American Freightways* precedent, which predates the Supreme Court's holding that Section 158(c) "implements the First Amendment."

Under the Board's interpretation of Section 158(a)(1) and 158(c), employer speech can be deemed an "unfair labor practice" in the absence of improper motive and other contextual prerequisites of a true threat. As such, Sections 158(a)(1) and 158(c) would become subject-matter-based and content-based restrictions that invade the First Amendment's province and would be subject to strict scrutiny. *Reed*, 576 U.S. at 173. Because NLRB's decision against Tesla rests only on the "communicative content" of Mr. Musk's tweet, then that decision and the statutory or regulatory provisions on which it depends are "subject to strict scrutiny." *Id.* at 164–165. To the NLRB, one must "read" the tweet (and only the tweet without its surrounding context) "to determine" which provisions of the NLRA apply—*i.e.*, whether the tweet violates

Section 158(a)(1), or whether it is non-punishable under Section 158(c). *Id.* at 162. But NLRB's pre-*Gissel* context-less *American Freightways* approach flunks strict scrutiny.

Justice Robert Jackson best encapsulates the grave First Amendment implications of government actions like NLRB's against Tesla: government cannot "force citizens" to speak or remain silent. *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 642 (1943). Absent proof of threat, NLRB cannot constitutionally order Tesla to compel Mr. Musk's speech or compel his silence by indirectly directing him to delete the tweet. The NLRA does not operate as a special exception to the First Amendment's broad-ranging protections for speech.

The First Amendment prevents NLRB from ordering Tesla to require Mr. Musk's compliance with its order. NLRB's delete-the-tweet order is irregular and not customary. Indeed, the ALJ refused to impose a delete-the-tweet order. This Court should not enforce the NLRB's order and instead it should grant Tesla's petition to rescind that order.

## II. THE COURT SHOULD NOT AFFORD ANY DEFERENCE TO NLRB'S INTERPRETATIONS

The Court should defer neither to NLRB's interpretation of Sections 158(a)(1) and 158(c) under *Chevron*, nor, under *Brand X*, to its attempted rewriting of the Supreme Court's *Gissel* decision, this Court's *Federal-Mogul* decisoin, and/or First Amendment jurisprudence. The NLRA's unambiguous and plain words, together with the Constitution and federal-court precedent, control over NLRB's contrary interpretations. Were the Court inclined to conclude that the relevant statutes or

regulations are ambiguous or silent, the Court should still not defer to NLRB's interpretation because such deference would be unconstitutional.

### A.     Deference Violates the Fifth Amendment's Due Process Clause

Deferring to NLRB's flawed interpretation "[t]ransfer[s] the job of saying what the law is from the judiciary to the executive." *Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1152 (10th Cir. 2016) (Gorsuch, J., concurring). Such bias and transfer of powers leads to "more than a few due process … problems." *Id.* at 1155.

Deference also removes the judicial blindfold. It requires judges to display systematic bias favoring government-agency litigants—and against counterparties like Tesla. Deference "embed[s] perverse incentives in the operations of government" and requires courts to "bow to the nation's most powerful litigant, the government, for no reason other than that it is the government." *Egan v. Delaware River Port Authority*, 851 F.3d 263, 278 (3d Cir. 2017) (Jordan, J., concurring). The "risk of arbitrary conduct is high" and deference puts "individual liberty … in jeopardy" because an agency can provide "minimal justification and still be entitled to full deference." *Id.* at 280. Judges deprive citizens of due process when they "engage in *systematic* bias in favor of the government … and against other parties." Philip Hamburger, Chevron *Bias*, 84 Geo. Wash. L. Rev. 1187, 1195 (2016) (emphasis added).

Typically, even the *appearance* of potential bias toward a litigant violates the Due Process Clause. *See Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009). Yet deference institutionalizes a regime of systematic judicial bias by requiring courts to "defer" to agency litigants especially where the agency litigant, as here, openly ignores or disregards written text and federal-court precedent. Deference doctrines thus force judges to

replace their own judgment about what the law means in favor of the legal judgment of one of the litigants before them.

All federal judges take an oath to "administer justice without respect to persons" and to "faithfully and impartially discharge and perform all the duties incumbent upon [them]." 28 U.S.C. § 453. Federal judges ordinarily follow these commitments scrupulously. Nonetheless, in affording deference, judges who are supposed to administer justice "without respect to persons" peek from behind the judicial blindfold, effectively precommit to favoring the government agency's position.

Whenever a deference doctrine is applied in a case in which the government is a party, the courts deny due process by favoring the government's interpretation of the law for no reason other than that it comes from the government. Judicial proceedings are, instead, required to provide "neutral and respectful consideration" of a litigant's views free from "hostility or bias." *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719, 1732, 1734 (2018) (Kagan, J., concurring).

### B.    Deference Undermines Judicial Independence Under Article III

Judges also abandon their Article III duty of independent judgment when they "become habituated to defer to the interpretive views of executive agencies, not as a matter of last resort but first." *Valent v. Commissioner of Social Security*, 918 F.3d 516, 525 (6th Cir. 2019) (Kethledge, J., dissenting). "[T]he agency is [then] free to expand or change the obligations upon our citizenry without any change in the statute's text." *Id.* That truth is especially obvious here because the NLRA has not changed in relevant part since it was enacted.

This Court should properly refuse to abdicate its judicial duty, as other courts have. In *MikLin Enterprises, Inc. v. NLRB*, 861 F.3d 812, 823 (8th Cir. 2017) (*en banc*), the majority explained that deferring to NLRB "would leave the Board free to disregard any prior Supreme Court or court of appeals interpretation of the NLRA." Refusing to abandon judicial independence, *MikLin* withheld deference.

Deference mandates that the government litigant win as long as its preferred interpretation seems "permissible," even if it is inferior. And here NLRB did not even bother to engage in a traditional-tools analysis when it rendered its decision in this case. But the Supreme Court requires lower courts to engage in a rigorous traditional-tools analysis to interpret statutes. *Chevron*, 467 U.S. at 843 n.9 ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. … If a court, employing traditional tools of statutory construction ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."); *City of Arlington v. FCC*, 569 U.S. 290, 296 (2013) ("First, applying the ordinary tools of statutory construction, the court must determine whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter[.]"); *see also Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (courts must "empty" the "legal toolkit"); *Baldwin v. United States*, 140 S. Ct. 690, 691 (2020) (Thomas, J., dissenting from denial of cert.) (*Brand X* is "inconsistent with the Constitution, the [APA], and traditional tools of statutory construction").

**C.    Deference Violates the Constitution's Separation of Powers**

Deference doctrines "rais[e] serious separation-of-powers questions" because they are "in tension with Article III's Vesting Clause," and "Article I's [Vesting Clause]." *Michigan v. EPA*, 576 U.S. 743, 760 (2015) (Thomas, J., concurring). The separation-of-powers concern is acute here because an Article II agency has aggrandized not only its own adjudicatory powers but encroached on Article III courts' adjudicatory authority.

Deference doctrines undermine "the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). The Court should call out the serious separation-of-powers problem with judicial deference—an issue the Supreme Court has never decided—and interpret statutes and apply current First Amendment law and federal-court precedent to the facts in this case *de novo*.

**D.    Canons of Construction Fully Resolve the Interpretive Question Here, Making Deference Unnecessary**

The Court should clarify that deference doctrines apply at most in rare instances where the meaning of the statute truly cannot be ascertained using ordinary statutory-construction methods. That approach would be consistent with the approach the Supreme Court took (by analogy) in *Kisor,* 139 S. Ct. at 2415, and long before that in *United States v. Dickson*, 40 U.S. 141 (1841). Justice Story, writing for the Court in *Dickson*, refused to defer to a Treasury Department interpretation of an act of Congress when Treasury had argued that its construction was "entitled to great respect." *Id.* at 161. Justice Story said, "the judicial department has … the solemn duty to interpret the

laws[;] … and … in cases where its own judgment shall differ from that of other high functionaries, it is not at liberty to surrender, or to waive it." *Id.* at 161–62.

Canons of construction are traditional tools of interpretation that the Court is required to apply before evaluating whether to defer. *Arangure v. Whitaker*, <u>911 F.3d 333, 342</u>–43 (6th Cir. 2018). NLRB will be hard pressed to offer any interpretive tool supporting its flawed reading of the undefined term "threat" in the NLRA. But it might try to peddle the argument that NLRB's preferred test is "objective." Objective, however, does not mean devoid of context or scienter. The Supreme Court has already interpreted the word "threat" in *Elonis* to require scienter. That should be the "end of the matter." *City of Arlington*, <u>569 U.S. at 296</u>.

NLRB has no special expertise in interpreting written words. That is the unique domain of federal courts. *See FedEx Home Delivery v. NLRB*, <u>849 F.3d 1123</u> (D.C. Cir. 2017) (rejecting *Chevron* and *Brand X* deference to NLRB's interpretation of "worker," "employee," "independent contractor"); *MikLin*, <u>861 F.3d 812</u> (declining deference to NLRB's interpretations of legal terms); *St. Charles Journal, Inc. v. NLRB*, <u>679 F.2d 759, 761</u> (8th Cir. 1982) (same). NLRB has no substantive or special expertise—either in matters of interpretation, or in evidentiary methods of proving a proposition through testimony, or via circumstantial or documentary evidence in an adversarial hearing. *FedEx*, <u>849 F.3d at 1128</u>; *Jicarilla Apache Tribe v. FERC*, <u>578 F.2d 289, 292</u>–293 (10th Cir. 1978) (the "basis for deference ebbs" when the "interpretive issu[e] … fall[s] more naturally into a judge's bailiwick").

A federal agency's determination of constitutional questions receives no deference. And Section 158(c) "merely implements the First Amendment." *Gissel*, <u>395</u>

U.S. at 617. As such, the Board's judgment of whether Mr. Musk communicated a threat outside of Section 158(c)'s safe harbor is an interpretation of the First Amendment. Constitutional analysis is thus central and inextricable from NLRB's decision, and it is this Court's job to interpret the Constitution. Federal agencies get no deference to their reading of the Constitution because deference doctrines relate only to an "agency's construction of [a] statute" or a federal regulation. *Chevron*, 467 U.S. 842; *City of Arlington*, 569 U.S. at 296.

*Chevron* did not analyze whether (let alone hold) that its deference doctrine comports with the Constitution. As such, it is not binding authority that insulates *Chevron* from constitutional review in the lower courts. But even if this Court viewed itself as unable to declare deference unconstitutional because *Chevron* commands the application of deference in certain circumstances, this Court could:

(1) hold that *Chevron* deference is turned off because of the presence of First Amendment questions, *see Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 574–75 (1988);

(2) hold that several key issues necessary to resolution are outside the competence of the NLRB and thus resolve them without reference to deference, *see Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002) ("The *Southern S.S. Co.* line of cases established that where the Board's chosen remedy trenches upon a federal statute or policy outside the Board's competence to administer, the Board's remedy may have to yield.") (so deciding over a *Chevron*-based dissent); or

(3) at the very least, avoid the constitutional problems by testing whether the best reading of the statute in the Court's view requires invalidation of the NLRB's decision under *Chevron* step one, *see Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1630 ("Finally, the *Chevron* Court explained that deference is not due unless a court, employing traditional tools of statutory construction, is left with an unresolved ambiguity. And that too is missing ….") (internal quotation marks omitted).

Given these viable alternatives, deference to any aspect of NLRB's decision would be especially egregious here.

### E.    *Home Concrete* Forbids NLRB's Revision of Supreme Court Decisions

*United States v. Home Concrete & Supply, LLC*, 566 U.S. 478 (2012), categorically states that *no* deference is due when an agency seeks to overturn or disregard Supreme Court precedent. In *Home Concrete*, the Supreme Court evaluated whether a Treasury Regulation interpreting a statute trumped a prior Supreme Court decision, *Colony, Inc. v. Commissioner*, 357 U.S. 28 (1958), interpreting a tax statute. Because *Colony* had already interpreted the tax statute, *Home Concrete* concluded that the statute is "now unambiguous," 566 U.S. at 489 (cleaned up), and declined to defer under *Brand X* to IRS's regulation. There was no gap for the agency to fill, and no gap it could create by discarding Supreme Court precedent and then filling it with its own preferred interpretation.

Perhaps NLRB will tell this Court that *Miller*, 334 NLRB 824, or *FDRLST*, repudiated *Gissel*'s totality-of-the-circumstances test. But NLRB cannot overturn *Gissel* because *Home Concrete* explicitly forbids "administrative contradiction of the Supreme

Court" even if *Brand X* might seem to permit federal agencies to overturn federal circuit-court decisions. 566 U.S. 478, 493 (2012) (Scalia, J., concurring in part, concurring in the judgment).

*Home Concrete*'s application here is straightforward. *Gissel* interpreted 29 U.S.C. § 158(c) as "merely implement[ing] the First Amendment" and interpreted that statute to require courts to look at the totality of the circumstances of the allegedly violative speech. 395 U.S. at 617. *Reed* implemented the First Amendment to require strict scrutiny. So did *Elonis* when it interpreted the statutory term "threat" as requiring scienter. The interpretive gaps have been filled by the Supreme Court, leaving no gap for NLRB to fill. Consequently, NLRB's contradiction of Supreme Court precedent must be repudiated.

### F.    No Deference Is Due in Cases Arising from Agency Adjudication

The due process violation is especially acute where a court defers to an agency's adjudication—as opposed to notice-and-comment rulemaking. There are two reasons why that is so.

First, when a federal district court determines a question of law, this Court (as does any federal appellate courts) reviews those determinations *de novo. Tamez v. City of San Marcos*, 118 F.3d 1085, 1091 (5th Cir. 1997). NLRB cases coming directly to this Court via the agency-adjudication route should be no different.

Second, agency adjudications "impose present legal consequences for past actions, making deference in such instances retroactive in its orientation and undermining reliance interests." Kristin E. Hickman & Aaron L. Nielson, *Narrowing* Chevron*'s Domain*, 70 Duke L.J. 931, 971 (2021). In contrast, "agency rulemaking

typically is prospective. Deference with retroactive application is much harder to defend than deference applied only prospectively." *Id.* (discussing *De Niz Robles v. Lynch*, 803 F.3d 1165 (10th Cir. 2015); *Gutierrez-Brizuela*, 834 F.3d 1142). "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Deferring to an agency's novel legal interpretation announced in an adjudication "would seriously undermine the principle that agencies should provide regulated parties fair warning" without which the agency's pronouncement "result[s] in precisely the kind of unfair surprise against which [Supreme Court] cases have long warned." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 (2012) (cleaned up). Narrowing deference's domain by excluding agency adjudications from *Chevron*'s reach is dictated by the Fifth Amendment's Due Process Clause. *Id.* at 971–977.

## G.    NLRB Consciously Disregards Circuit-Court Decisions

*Brand X* seems to have permitted federal agencies to overturn federal circuit-court decisions even if *Home Concrete* bars Article II agencies from overturning or disregarding Supreme Court decisions. *Home Concrete*, 566 U.S. at 493. *Brand X*'s regretful author would discard it now because "*Brand X* takes on the constitutional deficiencies of *Chevron* and exacerbates them." *Baldwin*, 140 S. Ct. at 695 (Thomas J., dissenting from denial of cert.). This Court would be wise to embrace that point and move in that direction.

The prospect of applying *Brand X* to NLRB's decision has never been as egregious. NLRB plainly and openly instructs its ALJs *not* to follow decisions by federal courts of appeals: "Administrative law judges must follow and apply Board precedent,

*notwithstanding contrary decisions by courts of appeals*, unless and until the Board precedent is overruled by the Supreme Court or the Board itself." NLRB Division of Judges Bench Book (Jan 2021), at § 13-100 (p. 143), https://bit.ly/2P0r2dY (emphasis added).

Such flagrant disrespect for circuit courts would not be possible without *Brand X*, which emboldens agencies to circumvent *stare decisis*. It empowers agencies to eviscerate precedents they do not like via agency adjudication—even long-established ones like this Court's *Federal-Mogul* (1978). Given that the vast majority of NLRB cases do not get reviewed by the Supreme Court, NLRB can conveniently replace unfavorable circuit-level precedents by providing only cursory justification for the changes. In *FDRLST*, NLRB analyzed the pertinent issues in a sum total of two footnotes and then applied that supposedly controlling decision against Tesla. *See FDRLST*, 370 NLRB No. 49, at *1 nn.3, 4. But "special justification" is necessary to overcome *stare decisis*. *Kisor*, 139 S. Ct. at 2422. Adherence to and judicial respect for *stare decisis*, therefore, should warrant non-deference and override *Brand X*. *Brand X* allows agencies to undercut predictability, stability, fair notice to parties, reasonable reliance, and settled expectations—values that *stare decisis* and the Fifth Amendment's Due Process Clause protect. And even where the circuit courts stick to their guns on rounds two and beyond, and the NLRB tries to erase a particular loss in a given circuit, this gives the NLRB a powerful "do over," which it might readily exercise in the hope of getting a different circuit panel the second or third, etc. time around. This is unseemly and does not promote respect for the law; it frustrates it.

The D.C. Circuit has chided NLRB for such non-acquiescence in circuit-court decisions and even ordered NLRB to pay attorney fees for its bad faith. *Heartland*

*Plymouth Court MI, LLC v. NLRB*, 838 F.3d 16 (D.C. Cir. 2016). Judge Janice Rogers Brown, writing for the majority, said that "nonacquiescence is justifiable only as a means to judicial finality, not agency aggrandizement. … [N]onacquiescence is divorced from its purpose when an agency asserts it with no stated intention of seeking *certiorari.*" *Id.* at 22.

The sad reality is that NLRB has explicitly baked non-acquiescence to circuit-court decisions into its rulebook. Hence, this Court should turn the tables and stop acquiescing in NLRB's decisions. Deference represents a kind of upside-down world. An agency that wields non-acquiescence as a sword to repeatedly wipe away one side of a circuit split running against the agency, instead of only as a shield on the road to trying to vindicate its view in the Supreme Court by pressing the same position rejected by one circuit in a different circuit, badly needs a lesson in judicial discipline.

Additionally, *Brand X* is unworkable because it provides no assurance that following the rule of law and conforming one's conduct accordingly will lead to predictable consequences. Litigants are doomed if they comply with court precedent, common law, or the statute. All is lost in a landscape of shifting sands. Before *Brand X*, courts seldom explicitly stated whether a statute is silent, truly ambiguous, or unambiguous. Such missing assessments make *Brand X* unworkable. Judges had no inkling that they must utter the "magic words"—"ambiguous" or "unambiguous"—"in order to (poof!) expand or abridge executive power, and (poof!) enable or disable administrative contradiction of" federal-court decisions. *Home Concrete*, 566 U.S. at 493 (Scalia, J., concurring in part and concurring in the judgment).

NLRB, wielding *Brand X*, has demoted circuit-court opinions into mere advisory opinions and promoted its own *ipse dixit* into governing law. *See Garfias-Rodriguez v. Holder*, 702 F.3d 504, 531 (9th Cir. 2012) (*en banc*) (Kozinski, J., "disagreeing with everyone") (under *Brand X*, court rulings are "necessarily provisional and subject to correction when the agency chooses to adopt its own interpretation of the statute" and when "[a]gencies … alone can speak … as to what the law means"). *Brand X* requires not merely judicial deference to agency interpretation but also judicial acquiescence in agency non-deference to judicial interpretation. Such a rule comprises a direct assault on judicial authority, judicial independence, and Article III.

Perhaps NLRB will seek to justify its instruction to its ALJs to ignore circuit-court cases on the ground that NLRB does not know in which circuit any one of its rules-by-adjudication may find itself subjected to judicial review. For Congress has allowed cases to be appealed to the circuit (1) where the alleged unfair labor practice "occurred" or "was alleged to have been engaged in," (2) where the charged party "resides," (3) where the charged party "transacts business," or (4) the D.C. Circuit. 29 U.S.C. §§ 160(e), (f). This case, for example, started in NLRB's Los Angeles Region and was properly appealed—as NLRB concedes—to the Fifth Circuit because Tesla "transacts business" in this circuit.

What we seek is for each circuit and this Circuit to follow its own precedent. For even if there were a circuit split relevant here, this Court is bound by its own precedent: *Federal-Mogul*. Only the *en banc* Fifth Circuit or the Supreme Court can override Fifth Circuit precedent. *Baisley v. International Association of Machinists & Aerospace Workers*, 983 F.3d 809, 811 (5th Cir. 2020); *Martin v. Medtronic, Inc.*, 254 F.3d 573, 577 (5th Cir. 2001).

The Court should stop there to recognize how extraordinarily dysfunctional *Brand X* deference is. It makes the NLRB able, with the stroke of a pen, into at least the equivalent of this court (or any circuit) sitting *en banc*. No muss, no fuss, no messy Federal Rules of Appellate Procedure controlling when *en banc* review can be granted, as cabin this Court's powers. And in reality, *Brand X* makes the NLRB *superior* to the Fifth Circuit sitting *en banc* because that case gives the NLRB the power even to wipe some *en banc* decisions off the map, depending on which step of *Chevron* the *en banc* court happened to invoke or which magic words ("ambiguous," "unambiguous," "silent") it failed to utter.

Moreover, while this Court is free to consider sister-circuit precedent, those cases are "persuasive authority at most." *United States v. Strahan*, 134 Fed. Appx. 709, 709 (5th Cir. 2005). That is, this Court sitting *en banc* gets to wield, at its option, a kind of "power to persuade," *Kisor*/*Skidmore*-like deference[4] to sister-circuit precedents that conflict with this Court's three-judge-panel precedents. *See, e.g., Johnson v. Randolph*, 5 F.3d 1494, 1494 (5th Cir. 1993) (concluding that this Court's precedent was more persuasive than decisions from the Second Circuit). From that perspective, the NLRB when wielding *Brand X* gets to operate in another way as a kind of super-court: For it can sweep aside a sister circuit's precedent it does not like and demand *Brand X* deference to its new rule, depriving this circuit of the free choice of whether to agree with a Board rule or a *Brand X*-overridden sister circuit rule as more persuasive.

---

[4]     *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

Still more fundamental, Article II agencies cannot sit as a super Supreme Court to resolve perceived circuit splits. That principle is at least as old as *Hayburn's Case*, 2 U.S. 408 (1792). The Pensions Act of 1792 established a scheme for disabled veterans of the American Revolution to apply for pensions to federal courts and authorized the Secretary of War to stay any such court decision. Five of the six Justices declared the Pensions Act unconstitutional because executive officials such as the Secretary of War cannot be authorized to revise or otherwise act in an adjudicatory capacity to review decisions of an independent Article III judge. Put differently, an independent judge has no power to decide cases that will be subject to revision and review by a principal officer of an executive agency. *See also Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218 (1995) ("Congress cannot vest review of the decisions of Article III courts in officials of the Executive Branch.").

For all of the foregoing reasons, NLRB should be forced to face up to the fact that this Court's *Federal-Mogul* decision is an insuperable barrier to NLRB's contrary policy preferences. NLRB's decision against Tesla must receive no deference.

* * *

In the end, NLRB wishes to force-erase Mr. Musk's tweet that reached over 22 million people. Many of those millions have discussed and debated Mr. Musk's online colloquy. Apparently, Mr. Musk's ideas and the online discussion they generated did not sit well with one union, a handful of employees, and the NLRB. NLRB responded by punishing Tesla without statutory authority. And its whims must now be subjected to meaningful judicial review. Instead, it could at best offer only naked *Brand X*-informed power along with deficient, not reasoned explanation, as a basis to sustain its

decision. To send the requisite disciplinary signals, NLRB's decision should be vacated since it offends the First Amendment, undermines the NLRA, and thumbs its nose at the authority of the courts of appeals.

## CONCLUSION AND PRAYER

The Court should grant Tesla's petition for review, set aside the portions of the Board's Order finding unfair labor practices and imposing remedies based on Mr. Musk's tweet, and deny the Board's cross-application to enforce those same parts of the Order.

Dated: August 11, 2021                    Respectfully submitted,

*/s/ Aditya Dynar*
ADITYA DYNAR
SHENG LI
JEFFREY BOSSERT CLARK
**NEW CIVIL LIBERTIES ALLIANCE**
1225 19th St. NW, Suite 450
Washington, DC 20036
(202) 869-5210
Adi.Dynar@NCLA.legal
Sheng.Li@NCLA.legal
*Attorneys for Amicus Curiae*

# CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing brief using the Court's CM/ECF system. I certify that the following participants are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system:

Ruth E. Burdick
Micah P. S. Jost
Kira Dellinger Vol
National Labor Relations Board
1015 Half Street, S.E.
Washington, DC 20570
appellatecourt@nlrb.gov
micah.jost@nlrb.gov
kira.vol@nlrb.gov
*Counsel for Respondent National Labor Relations Board*

Daniel E. Curry
Margo A. Feinberg
Schwartz, Steinsapir, Dohrmann & Sommers LLP
6300 Wilshire Boulevard
Suite 2000
Los Angeles, CA 90048
dec@ssdslaw.com
margo@ssdslaw.com
*Counsel for Petitioner International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO*

David B. Salmons
Michael E. Kenneally
David R. Broderdorf
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-3000
david.salmons@morganlewis.com
michael.kenneally@morganlewis.com
david.broderdorf@morganlewis.com
*Counsel for Tesla, Incorporated*

I certify that I sent a copy of the foregoing document via U.S. Mail to the following counsel:

Timothy L. Watson
National Labor Relations Board, Region 16
819 Taylor Street, Room 8A24
Fort Worth, TX 76102-6178
Timothy.Watson@nlrb.gov

Dated: August 11, 2021

/s/ Aditya Dynar
ADITYA DYNAR
NEW CIVIL LIBERTIES ALLIANCE

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This Brief complies with the type-volume limitation of FRAP 32(a)(7)(B) because:

- This Brief contains **6,120** words, excluding the parts of the brief exempted by FRAP 32(a)(7)(b)(iii), and within the word limit of 6,500 under FRAP 29(a)(5).

This Brief complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because:

- This Brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font.

Dated: August 11, 2021

*/s/ Aditya Dynar*
ADITYA DYNAR
NEW CIVIL LIBERTIES ALLIANCE

## ECF CERTIFICATION

I hereby certify that (i) the required privacy redactions have been made pursuant to CA5 R. 25.2.13; (ii) this electronic submission is an exact copy of the paper document pursuant to CA5 R. 25.2.1; (iii) this document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses; (iv) the original paper document was signed by the attorney of record and will be maintained for a period of three years after mandate or order closing the case issues, pursuant to CA5 R. 25.2.2.

/s/ Aditya Dynar
ADITYA DYNAR
NEW CIVIL LIBERTIES ALLIANCE