**No. 21-60285**

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### TESLA, INCORPORATED

#### Petitioner Cross-Respondent

### INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, AFL-CIO

#### Petitioner

#### v.

### NATIONAL LABOR RELATIONS BOARD

#### Respondent Cross-Petitioner

———————————————

### ON PETITIONS FOR REVIEW AND CROSS-APPLICATION FOR ENFORCEMENT OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD

———————————————

### RESPONSE OF THE NATIONAL LABOR RELATIONS BOARD IN OPPOSITION TO THE PETITION OF TESLA, INCORPORATED FOR REHEARING EN BANC

———————————————

**KIRA DELLINGER VOL**
*Supervisory Attorney*

**MICAH P.S. JOST**
*Attorney*

***National Labor Relations Board***
**1015 Half Street, SE**
**Washington, DC 20570**
**(202) 273-0656**
**(202) 273-0264**

**JENNIFER A. ABRUZZO**
*General Counsel*
**PETER SUNG OHR**
*Deputy General Counsel*
**RUTH E. BURDICK**
*Deputy Associate General Counsel*
**DAVID HABENSTREIT**
*Assistant General Counsel*

# **TABLE OF CONTENTS**

**Headings**                                                                                     **Page(s)**

Statement of the case....................................................................................1

The decisions of the Board and the Court.................................................1

Argument.......................................................................................................7

    I.   The panel properly applied the standard of review required by binding
          Supreme Court precedent ...........................................................7

    II. There is no conflict between the panel's decision and any court's
          precedent ..................................................................................12

Conclusion ...................................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Agostini v. Felton*,
   521 U.S. 203 (1997) ........................................................................ 11

*Bose Corp. v. Consumers Union*
   466 U.S. 485 (1984) ............................................................. 9, 10, 11

*Cadillac of Naperville, Inc. v. NLRB*,
   14 F.4th 703 (D.C. Cir. 2021) .............................................. 10

*Cellco Partnership v. NLRB*
   892 F.3d 1256 (D.C. Cir. 2018) ................................................ 13-14

*Cordua Rests., Inc. v. NLRB*,
   985 F.3d 415 (5th Cir. 2021) .............................................. 14

*ECM Biofilms, Inc. v. FTC*,
   851 F.3d 599 (6th Cir. 2017) ............................................ 9, 10

*FDRLST Media, LLC v. NLRB*,
   35 F.4th 108 (3d Cir. 2022) ...................................... 10, 12

*Fed.-Mogul Corp. v. NLRB*,
   566 F.2d 1245 (5th Cir. 1978) ............................................ 15

*Federated Logistics & Operations v. NLRB*,
   400 F.3d 920 (D.C. Cir. 2005) ............................................ 13

*Fleming Cos. v. NLRB*,
   349 F.3d 968 (7th Cir. 2003) ............................................ 10

*Hendrix Mfg. Co. v. NLRB*,
   321 F.2d 100 (5th Cir. 1963) ............................................ 13

*In-N-Out Burger, Inc. v. NLRB*,
   894 F.3d 707 (5th Cir. 2018) ............................................ 10

## TABLE OF AUTHORITIES (cont'd)

**Cases**                                                         **Page(s)**

*Kraft, Inc. v. FTC,*
  970 F.2d 311 (7th Cir. 1992) ........................................................... 9, 10

*Lear Siegler, Inc. v. NLRB,*
  890 F.2d 1573 (10th Cir. 1989) .......................................................... 10

*McGraw-Edison Co. v. NLRB,*
  419 F.2d 67 (8th Cir. 1969) ............................................................... 12

*McLane/W., Inc. v. NLRB,*
  723 F.2d 1454 (10th Cir. 1983) .......................................................... 11

*N.Y. Univ. Med. Ctr. v. NLRB,*
  156 F.3d 405 (2d Cir. 1998) ............................................................... 10

*Nat'l Coal. for Men v. Selective Serv. Sys.,*
  969 F.3d 546 (5th Cir. 2020) .............................................................. 11

*NLRB v. Dadco Fashions, Inc.,*
  632 F.2d 493 (5th Cir. 1980) ............................................................... 9

*NLRB v. Delta Gas., Inc.,*
  840 F.2d 309 (5th Cir. 1988) ........................................................... 6, 12

*NLRB v. Gen. Fabrications Corp.,*
  222 F.3d 218 (6th Cir. 2000) .............................................................. 10

*NLRB v. Gissel Packing Co.,*
  395 U.S. 575 (1969) ..........................................................6, 8, 9, 10, 11

*NLRB v. Grand Canyon Mining Co.,*
  116 F.3d 1039 (4th Cir. 1997) ............................................................ 10

*NLRB v. Hosp. San Pablo, Inc.,*
  207 F.3d 67 (1st Cir. 2000) ................................................................ 10

iii

# TABLE OF AUTHORITIES (cont'd)

**Cases**                                                                    **Page(s)**

*NLRB v. Laredo Coca Cola Bottling Co.*,
  613 F.2d 1338 (5th Cir. 1980) ........................................................... 14

*NLRB v. Roney Plaza Apartments*,
  597 F.2d 1046 (5th Cir. 1979) ......................................................... 14

*NLRB v. Sinclair Co.*,
  397 F.2d 157 (1st Cir. 1968) .............................................................. 8

*NLRB v. Transp. Mgmt. Corp.*,
  462 U.S. 393 (1983) ........................................................................... 4

*NLRB v. U.S. Postal Serv.*,
  526 F.3d 729 (11th Cir. 2008) ......................................................... 10

*NLRB. v. Mangurian's, Inc.*,
  566 F.2d 463 (5th Cir. 1978) ............................................................. 6

*NLRB. v. Riley-Beaird, Inc.*,
  681 F.2d 1083 (5th Cir. 1982) ........................................................... 6

*Pac. Molasses Co. v. NLRB*
  577 F.2d 1172 (5th Cir. 1978) ..................................................... 14, 15

*Poly-America, Inc. v. NLRB*,
  260 F.3d 465 (5th Cir. 2001) ........................................................... 10

*POM Wonderful, LLC v. FTC*,
  777 F.3d 478, 499 (D.C. Cir. 2015) .................................................... 9

*S. Bakeries, LLC v. NLRB*,
  871 F.3d 811 (8th Cir. 2017) ........................................................... 10

*Singer v. City of Waco*,
  Tex., 324 F.3d 813 (5th Cir. 2003) ................................................... 11

## TABLE OF AUTHORITIES (cont'd)

**Cases**                                                              **Page(s)**

*Sioux Prod., Inc. v. NLRB,*
    684 F.2d 1251 (7th Cir. 1982) ................................................................. 11, 12

*Sys. W. LLC v. NLRB,*
    196 F. App'x 562 (9th Cir. 2006) ....................................................... 10

*Tesla, Inc. v. NLRB,*
    63 F.4th 981 (5th Cir. 2023) .................................................................. 1

*United Servs. Auto. Ass'n v. NLRB,*
    387 F.3d 908 (D.C. Cir. 2004) ........................................................ 14

*Universal Camera Corp. v. NLRB,*
    340 U.S. 474 (1951) ..................................................................... 8, 11

*Veritas Health Servs.*, Inc. *v. NLRB,*
    671 F.3d 1267 (D.C. Cir. 2012) ....................................................... 14

*Wright Line,*
    251 NLRB 1083, 1089 (1980), *enforced on other grounds,*
    662 F.2d 889 (1st Cir. 1981) ............................................................... 4

# TABLE OF AUTHORITIES (cont'd)

**Statutes** **Page(s)**

National Labor Relations Act, as amended
  (29 U.S.C. § 151 et seq.)

Section 7 (29 U.S.C. § 157) ..................................................................... 14
Section 8(a)(1) (29 U.S.C. § 158(a)(1)) ........................................... 3, 5, 6
Section 8(a)(3) 29 U.S.C. § 158(a)(3)) ................................................... 3
Section 10(e) (29 U.S.C. § 160(e)) ..................................................... 6, 7

**Rules**

5th Circuit Rule 35.1 ............................................................................ 1
5th Circuit IOP ................................................................................... 13

## STATEMENT OF THE CASE

On March 31, 2023, a panel of the Court (Circuit Judges Dennis, Southwick, and Wilson) issued a unanimous opinion, *Tesla, Inc. v. NLRB*, 63 F.4th 981 (per curiam) ("Op."), enforcing an order of the National Labor Relations Board, *Tesla, Inc.*, 370 NLRB No. 101 (2021) (ROA.6239-93). Tesla filed a petition for rehearing *en banc*, and the Court requested a response.

In its petition, Tesla principally contends that the panel erred in applying the substantial-evidence standard of review to the Board's factual finding that Tesla's chief executive officer issued a tweet that coercively threatened employees. It also takes issue with one of the panel's two alternative grounds for upholding the Board's finding that Tesla discharged an employee for his union activity. Contrary to Tesla's claims, in upholding the Board's findings, the panel correctly applied the settled precedent of the Supreme Court and this Circuit, and its opinion accords with those of other circuits. Because Tesla offers no grounds for the "extraordinary" step of *en banc* review, its petition should be denied. 5th Cir. R. 35.1.

## THE DECISIONS OF THE BOARD AND THE COURT

In 2016, 2017, and 2018, automaker Tesla committed numerous violations of the National Labor Relations Act while opposing its employees' efforts to organize

with the United Auto Workers at its facility in Fremont, California.[1]  Tesla now

challenges only the panel's upholding of two unfair-labor-practice findings.

**Discharge for union activity.**  Employees Richard Ortiz and Jose Moran led

the union campaign.  (Op. 2-3.)  As part of that campaign, in September 2017,

Ortiz asked Moran to help him identify individuals Tesla had sent to a public

hearing to oppose union-backed legislation.  (Op. 4.)  Moran used his account in

Tesla's Workday program to confirm that they were Tesla employees and sent

screenshots of their photos to Ortiz.  Those actions did not violate any Tesla policy.

(Op. 5.)

Ortiz posted the screenshots on a private, pro-union Facebook page with a

comment criticizing what the antiunion employees had done.  One of those

employees complained to Ortiz, who promptly removed the post.  The employee

sent a screenshot of the post to the senior Tesla manager who had sent him to the

hearing.  (Op. 5.)  The manager initiated an internal investigation.  (Op. 6.)

---

[1]  In its petition, Tesla does not contest the panel's conclusions that Tesla unlawfully (1) interfered with employees' union leafletting; (2) threatened employees with discharge for distributing union materials; (3) threatened to make union representation futile; (4) prohibited employment-related communication with the media; (5) interrogated Richard Ortiz, Jose Moran, and another employee about union activity; (6) promulgated a new rule regarding its "Workday" program in response to Ortiz and Moran's union activity; and (7) disciplined Moran for his union activity.  (Op. 10 n.9.)

Tesla's investigator repeatedly questioned Ortiz, demanding to know who had given him the screenshots.  (Op. 6, 16.)  Ortiz initially said he could not remember.  But after the investigator consulted Workday logs and determined that it was Moran, Ortiz admitted that he had lied to protect his coworker.  Tesla discharged Ortiz on October 18, 2017.  (Op. 7.)  The next day, it disciplined Moran—unlawfully, as it no longer disputes—for the newly invented offense of "accessing Workday for non-business related purposes."  (Op. 6.)

Applying two alternative analytical frameworks, the Board found that Ortiz's discharge violated Section 8(a)(3) of the Act, 29 U.S.C. § 158(a)(3), which prohibits employers from discriminating against employees for supporting a union, and Section 8(a)(1), 29 U.S.C. § 158(a)(1), which prohibits coercing or interfering with employees' right to self-organization.  First, the Board found that Tesla's stated reason for the discharge—Ortiz's lie about the source of material for his prounion Facebook post—was unlawful.  (ROA.6285.)  The Board found, and Tesla no longer disputes, that the questioning that provoked that lie was unlawfully coercive.  (ROA.6288; Op. 10 & n.9.)  It also found that Tesla had no legitimate interest in discovering who had accessed Workday to take the screenshots, as that act violated no Tesla rule.  And it found that Ortiz reasonably understood that Tesla was warrantlessly prying into union activity that he had the right to keep

confidential.  His attempt to do so by lying in response to unlawful and unjustified

interrogation was not a lawful basis for his discharge.  (ROA.6285, 6288.)

Second, in the alternative, the Board applied the burden-shifting framework

set forth in *Wright Line*, 251 NLRB 1083, 1089 (1980), *enforced on other grounds*,

662 F.2d 889 (1st Cir. 1981), *approved in NLRB v. Transportation Management

Corp.*, 462 U.S. 393 (1983).  Under that framework, the Board found that Ortiz's

union activity motivated Tesla to discharge him, and that Tesla failed to carry its

affirmative-defense burden by showing that it would have discharged him for a

lawful reason regardless of his union activity.  (ROA.6286-88.)  Notably, the Board

found that even if Ortiz could have been lawfully discharged for his lie, that

justification was a mere pretext.  (ROA.6287.)

On review, the panel upheld both grounds for the Board's finding that Ortiz's

discharge was unlawful.  (Op. 14-15 (noting "[a]lternative[]" bases).)  First, the

panel concluded that substantial evidence supported the Board's finding, under

*Wright Line*, that "union activity was a motivating factor in [Ortiz's] discharge and

that Tesla's reason for the termination was pretextual." (Op. 15.)  It also agreed

with the Board's finding that the discharge "was not based on any specific [Tesla]

policy." (Op. 7.)  Second, in the alternative, the panel agreed with the Board that

the Act "protects an employee's right to keep his or her union activities

confidential, even if that means giving evasive or untruthful answers in response to

an employer's questions that an employee reasonably believes are inquiries into protected union activity." (Op. 15.)  It concluded that substantial evidence supported the Board's finding that the lie for which Tesla claimed it discharged Ortiz was "about protected union activity and not related to his job performance or Tesla's legitimate business interests or workplace rules." (Op. 16.)

**Threat of loss of benefits.**  On May 20, 2018, in response to a question about his views on unions, Tesla CEO Elon Musk tweeted:

> Nothing stopping Tesla team at our car plant from voting union.  Could do so tmrw if they wanted.  But why pay union dues & give up stock options for nothing?  Our safety record is 2X better than when plant was UAW & everybody already gets healthcare.

(Op. 7.)

The Board found that the tweet violated Section 8(a)(1) of the Act because it would reasonably tend to coerce employees in the exercise of their right to select union representation.  (ROA.6239, 6289-90.)  The Board explained that the tweet "indicate[d] that employees would lose stock options if they voted to unionize," and neither cited "objective facts" to support that claim, nor suggested that the loss would result from collective-bargaining negotiations or factors outside Tesla's control.  (ROA.6289.)  Considering the tweet in its full context, which included subsequent statements Musk made on Twitter and the plethora of unfair labor practices Tesla had committed during its years-long antiunion campaign, the Board found that "any employee reading Musk's statement would reasonably conclude

5

that Musk threatened to remove employee stock options if the employees chose
unionization."  (ROA.6289-90.)

The panel upheld the Board's finding of unlawful coercion.  (Op. 10-14.)  At
the outset, the panel observed that the Court reviews the Board's legal
determinations de novo and upholds the Board's factual findings if they are
"supported by substantial evidence on the record considered as a whole."  (Op. 8-9
(quoting 29 U.S.C. § 160(e).)  The panel then recognized that "binding precedent
requires [the Court] to apply the substantial evidence standard of review to factual
findings as to whether a written statement is reasonably understood as a threat or
tends to be coercive."  (Op. 11 (citing *NLRB v. Gissel Packing Co.*, 395 U.S. 575,
619-20 (1969); *NLRB. v. Riley-Beaird, Inc.*, 681 F.2d 1083, 1086-87 (5th Cir.
1982); *NLRB. v. Mangurian's, Inc.*, 566 F.2d 463, 466-67 (5th Cir. 1978)).)

Turning to the merits, the panel noted that an employer makes an unlawful
threat in violation of Section 8(a)(1) "if under the totality of the circumstances, an
employee could reasonably conclude that the employer is threatening economic
reprisals if the employee supports the union."  (Op. 11 (quoting *NLRB v. Delta
Gas., Inc.*, 840 F.2d 309, 311 (5th Cir. 1988)).)  Applying that standard to Musk's
tweet, the panel agreed with the Board that "stock options are part of Tesla's
employees' compensation, and nothing in the tweet suggested that Tesla would be
forced to end stock options or that the [Union] would be the cause of giving up

6

stock options." (Op. 13.) Thus, the panel concluded, substantial evidence supported the Board's finding that the tweet was "an implied threat to end stock options as retaliation for unionization." (Op. 13.) The panel evaluated the tweet "within the context of the same Twitter thread as a whole, as well as a related Twitter thread, and a later press release." (Op. 13.) It concluded that Tesla's subsequent communications did not neutralize the threat and that Tesla's "history of labor violations support[ed] the [Board]'s finding that employees would understand Musk's tweet as a threat to commit another violation by rescinding stock options as retaliation." (Op. 14.) "Moreover," the panel noted, "the statement in the tweet is materially similar to other statements that the [Board] and our [C]ourt have found to be threats." (Op. 13 (collecting cases).)

## ARGUMENT

### I.     The Panel Properly Applied the Standard of Review Required by Binding Supreme Court Precedent

There is no merit to Tesla's claim that the panel erred in applying substantial-evidence review to the Board's factual finding that Musk's tweet was coercive. As the panel recognized (Op. 9), the Act provides that the Board's findings of fact are "conclusive" if supported by "substantial evidence on the record as a whole." 29 U.S.C. § 160(e). That standard, the Supreme Court has made clear, does not permit a reviewing court to substitute its judgment for the

Board's where factual findings or inferences are concerned. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).

As the panel correctly observed, in *Gissel*, 395 U.S. 575, the Supreme Court specifically instructed the courts of appeals to apply substantial-evidence review to the factual question at issue here: "whether a written statement is reasonably understood as a threat or tends to be coercive." (Op. 11.) The court of appeals decision at issue in *Gissel* recognized that "[w]hether an employer has used language that is coercive in its effect is a question essentially for the specialized experience of the Board," and concluded that "there [wa]s substantial evidence to support" the Board's finding on that score. *NLRB v. Sinclair Co.*, 397 F.2d 157, 161 (1st Cir. 1968). Affirming that judgment, the Supreme Court likewise asked whether "the Board could reasonably conclude" that the employer's writings— "pamphlets, leaflets, and letters"—were a threat of economic reprisal for unionization rather than a prediction of likely economic consequences outside the employer's control. *Gissel*, 395 U.S. at 619.

The employer in *Gissel*, like Tesla here, attacked the substantial-evidence standard on First Amendment grounds. 395 U.S. at 620. In rejecting that challenge, the Supreme Court emphasized that when the Board finds employees would reasonably perceive a prediction of the effects of unionization as a threat, "a reviewing court must recognize the Board's competence in the first instance to

8

judge the impact of utterances made in the context of the employer-employee relationship." *Id.* And this Court, as the panel recognized, has followed *Gissel*'s command. (Op. 11 (collecting cases).) *See also, e.g.*, *NLRB v. Dadco Fashions, Inc.*, 632 F.2d 493, 497 (5th Cir. 1980) (because employer speeches could "reasonably be construed to threaten plant closure," there was "substantial evidence to support the Board's unfair labor practice findings").

Tesla asks the Court to ignore *Gissel* and instead review the Board's factual finding of a threat de novo. (Pet. 7-9.) It relies on *Bose Corp. v. Consumers Union*, which addressed the very different standard for reviewing a district court's determination, in a libel case, that a false statement was made with "actual malice." 466 U.S. 485, 487 (1984). But "the Supreme Court provided no indication that it intended *Bose* or [its progeny] to overrule the substantial-evidence standard for [a federal agency's] factual findings." *ECM Biofilms, Inc. v. FTC*, 851 F.3d 599, 614 (6th Cir. 2017). Tesla cites no case extending *Bose* in that manner, and three circuits have expressly refused to do so.[2] Meanwhile, over the four decades since

---

[2] *See ECM*, 851 F.3d at 614; *POM Wonderful, LLC v. FTC*, 777 F.3d 478, 499 (D.C. Cir. 2015), *cert. denied*, 578 U.S. 965 (2016); *Kraft, Inc. v. FTC*, 970 F.2d 311, 316-18 (7th Cir. 1992).

9

*Bose* was decided, this Court and every other circuit have continued to apply the

substantial-evidence review that *Gissel* mandates.[3]

The universal refusal of courts to import *Bose* into this context is well

justified. While "there was little reason to defer to the factual findings of the lower

court[] in *Bose*," agency "findings are well-suited to deferential review." *ECM*,

851 F.3d at 614. Here, as the panel recognized, the Board is entitled to deference

because it of its "primary responsibility for administering the Act and its expertise

in labor relations." (Op. 9 (quoting *In-N-Out Burger, Inc. v. NLRB*, 894 F.3d 707,

714 (5th Cir. 2018)).) Unlike a district court, the Board is uniquely competent to

evaluate the impact of statements "in the context of the employer-employee

relationship." *Gissel*, 395 U.S. at 620. *Cf. Kraft, Inc. v. FTC*, 970 F.2d 311, 317

(7th Cir. 1992) ("[C]ourts generally lack the [Federal Trade] Commission's

---

[3]  *See, e.g.*, *Cadillac of Naperville, Inc. v. NLRB*, 14 F.4th 703, 717-19 (D.C. Cir.
2021), *reh'g en banc denied*, 2021 U.S. App. LEXIS 34746 (D.C. Cir. 2021), *cert.
denied*, 142 S. Ct. 2650 (2022); *NLRB v. Hosp. San Pablo, Inc.*, 207 F.3d 67, 76
(1st Cir. 2000); *N.Y. Univ. Med. Ctr. v. NLRB*, 156 F.3d 405, 411 (2d Cir. 1998);
*FDRLST Media, LLC v. NLRB*, 35 F.4th 108, 122 (3d Cir. 2022); *NLRB v. Grand
Canyon Mining Co.*, 116 F.3d 1039, 1045 (4th Cir. 1997); *Poly-America, Inc. v.
NLRB*, 260 F.3d 465, 484 (5th Cir. 2001); *NLRB v. Gen. Fabrications Corp.*, 222
F.3d 218, 230 (6th Cir. 2000); *Fleming Cos. v. NLRB*, 349 F.3d 968, 974 (7th Cir.
2003); *S. Bakeries, LLC v. NLRB*, 871 F.3d 811, 821 (8th Cir. 2017), *reh'g & reh'g
en banc denied*, 2018 U.S. App. LEXIS 1450 (8th Cir. 2018); *Sys. W. LLC v.
NLRB*, 196 F. App'x 562, 563 (9th Cir. 2006); *Lear Siegler, Inc. v. NLRB*, 890 F.2d
1573, 1579 (10th Cir. 1989); *NLRB v. U.S. Postal Serv.*, 526 F.3d 729, 732 (11th
Cir. 2008).

expertise in the field of deceptive advertising."). Thus, *Bose* presents no conflict with *Gissel* and *Universal Camera*.

But even if *Bose* could be read as undermining those precedents, this Court remains bound by them. The Supreme Court has instructed that if one of its precedents "has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme Court] the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (quotation omitted). A court of appeals "cannot ignore a decision from the Supreme Court unless directed to do so by the Court itself." *Nat'l Coal. for Men v. Selective Serv. Sys.*, 969 F.3d 546, 549 (5th Cir. 2020) (per curiam) (quotation omitted), *cert. denied*, 141 S. Ct. 1815 (2021). *Accord Singer v. City of Waco, Tex.*, 324 F.3d 813, 817-18 (5th Cir. 2003) (quoting *Agostini*, 521 U.S. at 237). As the panel correctly held, *Gissel* is the directly controlling case here. (Op. 11.)

In any event, the panel gave no indication that it would have reached a different result had it applied de novo review. On the contrary, it explicitly found that Musk's tweet was "materially similar" to other unlawfully coercive statements. (Op. 13.) *See, e.g.*, *McLane/W., Inc. v. NLRB*, 723 F.2d 1454, 1457 (10th Cir. 1983) ("employees would lose benefits if the union won the election," including "profit-sharing plan"); *Sioux Prod., Inc. v. NLRB*, 684 F.2d 1251, 1254 (7th Cir.

1982) (employees "would lose profit-sharing and other benefits if the union won");

*McGraw-Edison Co. v. NLRB*, 419 F.2d 67, 70 (8th Cir. 1969) (if the union got in,

"the plant would close and [employees] would lose [their] hospitalization

insurance and our profit sharing").  Because Musk's threat to take away benefits if

employees unionized was unlawful under any standard of review, Tesla's request

for *en banc* rehearing is doubly unjustified.

## II.    There Is No Conflict Between the Panel's Decision and Any Court's Precedent

Tesla fails to demonstrate that the panel's treatment of Musk's tweet

conflicts with any other circuit's precedent.  Tesla points to the Third Circuit's

observation that "any finding of a prohibited threat must be made by examining the

employer's statement in its full context."  (Pet. 13 (quoting *FDRLST Media, LLC v.*

*NLRB*, 35 F.4th 108, 127 (3d Cir. 2022)).)  But that standard accords with the

decisions of the Board and the panel here:  they both agreed that coercion must be

evaluated "under the totality of the circumstances."  (Op. 11 (quoting *Delta Gas.*,

840 F.2d at 311).  *Accord* ROA.6289 (statements are evaluated "under all

circumstances" (quotation omitted)).)  Like the Third Circuit in *FDRLST*, 35 F.4th

at 121-26, the panel examined the full context of the tweet at issue to determine

whether substantial evidence supported the Board's finding of a threat.  (Op. 12-

14.)

12

Tesla's objection is simply that the panel disagreed with Tesla's factual argument "that the tweet, especially when viewed in context, was not a threat." (Op. 11.)  Instead, the panel concluded that the tweet's context, including Tesla's numerous violations of the law throughout its antiunion campaign, "support[ed] the [Board]'s finding that employees would understand Musk's tweet as a threat to commit another violation by rescinding stock options as retaliation."  (Op. 13-14.) *See, e.g.*, *Hendrix Mfg. Co. v. NLRB*, 321 F.2d 100, 103 (5th Cir. 1963) (employer's antiunion activities are "properly 'background' against which to measure statements"); *Federated Logistics & Operations v. NLRB*, 400 F.3d 920, 927 (D.C. Cir. 2005) (unfair labor practices "lent additional coercive meaning" to employer's statements).  Tesla's fact-bound disagreement with the panel's contextual analysis is nothing more than an attack on the sufficiency of the evidence.  (Pet. 13-15.)  It provides no basis for rehearing *en banc*.  5th Cir. IOP at p. 35.

Tesla also fails to show that the panel's analysis of Ortiz's discharge conflicts with any court's precedent.  It principally relies (Pet. 16) on *Cellco Partnership v. NLRB*, a factually distinguishable case in which the D.C. Circuit concluded that the employer appropriately inquired about a conversation between two employees because one of them cited the exchange as a defense to alleged misconduct.  892 F.3d 1256, 1264 (D.C. Cir. 2018).  The D.C. Circuit concluded that the employer in that case—unlike Tesla (Op. 16)—was not "doing any more

than conducting a valid inquiry with no motive to pry into or interfere with protected activities." *Id.* But the court took care to reaffirm the rule that the panel applied here: "employees are not obligated to answer truthfully if an employer is really seeking to probe into protected actions." *Id.* at 1263-64.

That principle is well established in the D.C. Circuit's precedent. *See United Servs. Auto. Ass'n v. NLRB*, 387 F.3d 908, 917 (D.C. Cir. 2004) (holding that "dishonesty about [employee's] protected concerted activity did not constitute a lawful reason to discharge her"). And this Court's decisions are in accord. *See Cordua Rests., Inc. v. NLRB*, 985 F.3d 415, 429 (5th Cir. 2021) ("[A]n employer cannot avoid liability by pointing to evasive statements by an employee in response to questioning inextricably involved with the employee's protected conduct." (quotation omitted)); *NLRB v. Roney Plaza Apartments*, 597 F.2d 1046, 1050-51 (5th Cir. 1979) (false denial of protected activity "cannot stand" as reason for discharge). Both circuits' caselaw reflects the settled principle "that Section 7 of the Act gives employees the right to keep confidential their union activities." *Veritas Health Servs., Inc. v. NLRB*, 671 F.3d 1267, 1274 (D.C. Cir. 2012) (Kavanaugh, J.) (quotation omitted). *Accord NLRB v. Laredo Coca Cola Bottling Co.*, 613 F.2d 1338, 1342 n.7 (5th Cir. 1980) (employees are "entitled to keep from [the] employer" their views on union matters); *Pac. Molasses Co. v. NLRB Reg'l*

14

*Off. No. 15*, 577 F.2d 1172, 1182 (5th Cir. 1978) ("right to privacy" is "necessary to full and free exercise of the organizational rights guaranteed by the [Act]").

*Federal-Mogul Corp. v. NLRB*, 566 F.2d 1245 (5th Cir. 1978), which Tesla cites (Pet. 17), says nothing to the contrary. That case stands for the proposition that an employer can lawfully discharge an employee for lying about misconduct—absenteeism, in that case—that is unrelated to protected activity. *Id.* at 1259. But where, as here, an employer interrogates an employee about protected activity that it has no legitimate interest in uncovering, the panel properly recognized that the employee's defensive evasion or falsehood cannot justify discharge. (Op. 15-16.)

In any event, the issue is academic. Even if the panel had erred—that is, even if Tesla could have lawfully discharged Ortiz for saying he could not remember who assisted him in his union activity, in response to an unlawful interrogation unrelated to Tesla's legitimate business interests—the Board discredited Tesla's claim that it was motivated by that lie. Instead, the Board found that Tesla seized on Ortiz's lie as a pretext and was, in fact, solely motivated by its animus toward Ortiz's underlying union activity. (ROA.6287.) The panel upheld that factual finding, and its enforcement of the Board's order as to Ortiz stands independently on that basis. (Op. 15-17.) Tesla does not even assert that the panel erred in that regard—much less that it erred in a way that merits *en banc* rehearing.

That Tesla's disagreement with the panel could not affect the outcome of the case only underscores its failure to raise any issue of exceptional importance.

## CONCLUSION

For the foregoing reasons, the Board respectfully asks the Court to deny Tesla's petition for rehearing *en banc*.

<div style="margin-left: 50%;">

Respectfully submitted,

s/ Ruth E. Burdick
RUTH E. BURDICK
*Deputy Associate General Counsel*

s/ Kira Dellinger Vol
KIRA DELLINGER VOL
*Supervisory Attorney*

s/ Micah P.S. Jost
MICAH P.S. JOST
*Attorney*

National Labor Relations Board
1015 Half St. SE
Washington, DC 20570
(202) 273-2960
(202) 273-0656
(202) 273-0264

</div>

JENNIFER A. ABRUZZO
 *General Counsel*

PETER SUNG OHR
 *Deputy General Counsel*

RUTH E. BURDICK
 *Deputy Associate General Counsel*

DAVID HABENSTREIT
 *Assistant General Counsel*

National Labor Relations Board

May 2023

16

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

| | | |
|---|---|---|
| TESLA, INCORPORATED, | ) | |
| | ) | |
| Petitioner Cross-Respondent | ) | |
| | ) | |
| INTERNATIONAL UNION, UNITED | ) | No. 21-60285 |
| AUTOMOBILE, AEROSPACE AND | ) | |
| AGRICULTURAL IMPLEMENT WORKERS | ) | |
| OF AMERICA, AFL-CIO, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | Board Case Nos. |
| v. | ) | 32-CA-197020, et al. |
| | ) | |
| NATIONAL LABOR RELATIONS BOARD, | ) | |
| | ) | |
| Respondent Cross-Petitioner | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2023, I electronically filed the foregoing

document with the Clerk of the Court for the United States Court of Appeals for

the Fifth Circuit by using the CM/ECF system.  I certify further that the foregoing

document was served on all parties or their counsel of record through the appellate

CM/ECF system.

s/ Ruth E. Burdick
Ruth E. Burdick
Deputy Associate General Counsel
NATIONAL LABOR RELATIONS BOARD
1015 Half Street, SE
Washington, DC  20570
(202) 273-2960

Dated at Washington, DC
this 30th day of May 2023

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

| | | |
|---|---|---|
| TESLA, INCORPORATED, | ) | |
| | ) | |
| Petitioner Cross-Respondent | ) | |
| | ) | |
| INTERNATIONAL UNION, UNITED | ) | No. 21-60285 |
| AUTOMOBILE, AEROSPACE AND | ) | |
| AGRICULTURAL IMPLEMENT WORKERS | ) | |
| OF AMERICA, AFL-CIO, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | Board Case Nos. |
| v. | ) | 32-CA-197020, et al. |
| | ) | |
| NATIONAL LABOR RELATIONS BOARD, | ) | |
| | ) | |
| Respondent Cross-Petitioner | ) | |

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the Board

certifies that the foregoing document contains 3,681 words of proportionally

spaced, 14-point type, and the word-processing system used was Microsoft

Word for Office 365.

s/ Ruth E. Burdick
Ruth E. Burdick
Deputy Associate General Counsel
NATIONAL LABOR RELATIONS BOARD
1015 Half Street, SE
Washington, DC  20570
(202) 273-2960

Dated at Washington, DC
this 30th day of May 2023